A05A0650. SNIPES et al. v. MARCENE P. POWELL & ASSOCIATES, INC.
(616 SE2d 152)

JOHNSON, Presiding Judge.

William and Ella Snipes signed an exclusive seller listing agreement with real estate brokerage firm Marcene P. Powell & Associates, Inc. ("Powell & Associates"). The listing agreement was for the period of February 18, 2002 through August 18, 2002. It provided that Powell & Associates would have the exclusive right to show the Snipeses' property and offer it for sale, would use its best efforts to procure a buyer, and would assist the Snipeses as requested with a sales contract. The Snipeses agreed, among other things, to pay Powell & Associates a real estate commission if, during the term of the agreement, Powell & Associates procured a buyer for the property or if the Snipeses entered into an enforceable sales contract with any buyer, whether through the efforts of Powell & Associates or any other person. The agreement further provided that

> In the event that Seller sells or contracts to sell the Property to any buyer introduced to the Property by Broker within 90 days after the expiration of the Listing Period, then Seller

---

shall pay the commission referenced above to Broker at the closing of the sale or exchange of the Property.

During the six-month listing period, Charles Folger telephoned Powell & Associates about two properties the firm had listed for sale, including the Snipeses' property on which he had seen Powell & Associates' "For Sale" sign. In her conversation with Folger, Marcene Powell discussed the price of the Snipeses' property and whether the property could be divided. According to the Snipeses, Folger had no further contact with Powell & Associates regarding the property. However, Marcene Powell stated that she and Folger scheduled three appointments to visit the property, but that Folger either cancelled the appointments or failed to appear as scheduled.

On October 8, 2002, after the listing period expired but within 90 days after August 18, Folger purchased the property from the Snipeses. Powell & Associates did not receive a commission on the sale.

Claiming it was entitled to receive a commission for the sale, Powell & Associates sued the Snipeses. The Snipeses appeal from the grant of summary judgment to Powell & Associates and the denial of their motion for summary judgment. We affirm the judgment of the trial court.

1. The Snipeses contend the trial court erred in granting summary judgment to Powell & Associates. They argue that Powell & Associates did not "introduce" Folger to the property by merely placing a "For Sale" sign and answering Folger's phone call. They add that even if the actions were sufficient, the introduction did not occur within 90 days after the listing period expired as mandated by the contract for a commission to be due.

Contract construction involves a three-step analysis by the trial court: (1) the court must decide if the contract language is unambiguous; if it is not ambiguous, the court enforces the contract's clear terms; (2) if the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity; and (3) if the ambiguity remains after use of the construction rules, the meaning of the contract must be decided by a jury.[1]

(a) *What must have occurred within 90 days of the listing period expiration date for Powell & Associates to be entitled to a commission?*

While both parties in this case take the position that the contract language is not ambiguous, they interpret it in ways which have opposing meaning. Powell & Associates maintains that the language clearly states that a commission is due if a *sale or contract to sell* occurs within 90 days of the listing's expiration date (assuming the

---

[1] *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 315-316 (1) (554 SE2d 296) (2001).

broker introduced the buyer to the property during the listing period). The Snipeses, on the other hand, urge that the language clearly provides for payment of a commission if the *introduction* occurs within 90 days after the listing period expires.

Ambiguity exists when a contract contains an uncertain meaning, is duplicitous, and indistinct, or when a word or phrase may be fairly understood in more than one way.[2] The existence or non-existence of ambiguity in a contract is a question of law for the court.[3] In this case, the trial court does not indicate in its judgment whether it found the phrase to be ambiguous. We hold that the language is ambiguous in that it is duplicitous and may be fairly understood in more than one way. For the reasons that follow, we find that Powell & Associates' interpretation regarding the meaning of the extension clause is correct.

Because the provision is ambiguous, the applicable rules of construction must be employed to determine the parties' meaning.[4]

> The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of the instrument together, and to consider this with the surrounding circumstances. The rules of grammatical construction usually govern, but even these may be disregarded in order to effectuate the intention. So, also, sentences and words may be transposed, and conjunctions substituted for each other. . . . The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction. The construction which will uphold the contract in whole and in every part is to be preferred, and the whole contract is to be looked to in arriving at the construction of any part.[5]

The Snipeses' contention that in order for Powell & Associates to obtain a commission, the firm had to introduce the buyer to the property after the listing period expired makes no sense in the

---

[2] Id. at 315 (1).

[3] *Salvatori Corp. v. Rubin*, 159 Ga. App. 369, 372 (1) (283 SE2d 326) (1981).

[4] *Asian Square Partners v. Ly*, 238 Ga. App. 165, 167 (518 SE2d 166) (1999).

[5] (Citation and punctuation omitted.) *Redman Dev. Corp. v. Piedmont Heating &c.*, 128 Ga. App. 447, 450 (1) (197 SE2d 167) (1973).

context of the entire agreement. The agreement granted the firm the exclusive right to show the property and offer it for sale *during* the listing period. Powell & Associates had no authority under the agreement to show the property *after* the listing period expired.

On the other hand, under Powell & Associates' interpretation, the firm was entitled to a commission if it introduced a buyer to the property during the listing period, though the sale or the execution of a sales contract did not occur until the 90-day extension period began. This interpretation is consistent with the rest of the agreement, and appears to reflect the true intent of the parties.

Moreover, it is clear that the purpose of the clause at issue is to prevent parties from waiting for the listing period to expire before consummating the sale so that the sale can occur without the payment of a commission to the broker who participated in the transaction. The executive vice president of the Georgia Association of Realtors (GAR) testified by affidavit that GAR prepared the form used in this case, and that it revised the language of a previous form to substitute the word "submitted" for "introduced" in order to expand the factual situations under which a broker could obtain a commission on a property the broker had listed for sale. According to the witness, GAR intended to obligate sellers to pay commissions in situations where the broker told the buyer about the property, provided the buyer with information about the property, or showed the buyer the property.

We note that the fact that the real estate board drafted the agreement form does not require a result in the Snipeses' favor. While contracts, where the construction is doubtful, must be construed against the party drawing and executing them,[6] nevertheless, a contract should not be torn apart and construed in pieces.[7] Instead, the court should look to the entire instrument and so construe it as to reconcile its different parts and reject construction which leads to contradiction, in order to ascertain the true intention of the parties, which is the real purpose of judicial construction of contracts.[8] Reviewing the entire instrument as required by the law, we conclude that Powell & Associates is entitled to a commission provided the introduction occurred during the listing period and the sale or contract execution occurred within 90 days after the listing period expired.

(b) *Did Powell & Associates "introduce" the buyer to the property?*

---

[6] OCGA § 13-2-2 (5).

[7] See *Perimeter Mall, Inc. v. Retail Sense, Inc.*, 162 Ga. App. 465, 466 (2) (291 SE2d 392) (1982).

[8] Id.; see *Shore v. Loomis*, 187 Ga. App. 674, 675 (1) (371 SE2d 96) (1988).

The Snipeses argue that the simple posting of a "For Sale" sign and the answering of a telephone inquiry regarding price do not amount to an introduction to the property. They posit that Powell & Associates' actions had no causal connection or relationship to the sale which occurred about six weeks after the listing period expired. Powell & Associates' actions were sufficient.

In construing a contract, words are given their common meaning.[9] "Introduce" means "to present to the public for the first time," "to bring forward for consideration," or "to provide someone with a beginning knowledge or first experience of something."[10] Thus, an introduction does not require a great deal of action. We hold that the word "introduced," as used in the extension clause, does not require that the broker be the predominant or procuring cause of the sale. Rather, it requires only that the broker's actions have at least some minimal causal connection with the sale, or be in the chain of causation leading to the sale.[11] A broker "introduces" a purchaser to a principal if, through any means the broker uses to attract attention, the purchaser is led to the principal.[12]

Charles Folger saw the "For Sale" sign on the property and called Powell in February 2002. He spoke to Powell about the Snipeses' property. Although there is some dispute about the details of the conversation, as well as conflict regarding whether Powell and Folger scheduled appointments for Powell to show Folger the property, both Powell and Folger agree that Folger called Powell after seeing her sign, and they discussed the price of the property. Folger bought the property in October 2002. It is clear that Powell & Associates introduced Folger to the property. The trial court did not err in granting summary judgment to Powell & Associates.

2. In a separate enumeration of error, the Snipeses contend the trial court erred by denying their motion for summary judgment because they did not sell their property to a buyer Powell & Associates introduced to their property within 90 days after the expiration of the listing period. As discussed above, based on the language of the contract, Powell & Associates was entitled to a commission in this case. The Snipeses were not entitled to judgment as a matter of law,

---

[9] OCGA § 13-2-2.

[10] American Heritage Dictionary of the English Language (3rd ed.).

[11] See *Upper Cape Realty Corp. v. Morris*, 53 Mass. App. 53 (756 NE2d 1193, 1197) (2001) (broker operating under an exclusive listing agreement not required to be predominant or procuring cause of sale where contract permitted fee if broker "introduced" buyer to property; commission due where purchaser was led to the seller by any means through which broker attracted his attention).

[12] Id., citing Restatement (Second) of Agency § 448, comment d, at 357 (1958).

so the court properly denied their motion for summary judgment.[13]
*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JUNE 21, 2005 —

*William A. Trotter III, Warren D. Evans*, for appellants.
*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Todd E. Hatcher*, for appellee.

---

[13] See generally *Walston v. White*, 213 Ga. App. 441, 443 (444 SE2d 855) (1994).